UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Jane Doe

   v.

                Case No. 1:25-cv-00411-JL-AJ
                Opinion No. 2026 DNH 057

Jamie Hermanson

## MEMORANDUM ORDER

Before the court is a motion to dismiss a complaint asserting various tort claims arising out of the alleged transmission of a sexually transmitted infection, on the grounds that the claims are time-barred or not recognized under New Hampshire law.  The court has subject-matter jurisdiction under 28 U.S.C. § 1332 (diversity).  Because the court finds that factual issues preclude a finding that the statute of limitations has run as to the plaintiff's claims, and that there is no categorical bar on tort liability for the defendant's alleged conduct under New Hampshire law, the motion is denied.

### I. Legal standards

To state a claim for relief, a complaint must set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Martinez v. Petrenko*, 792 F.3d 173, 179 (1st Cir. 2015).  This standard "demands that a party do more than suggest in conclusory terms the existence of questions of fact about the elements of a claim."  *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 81 (1st Cir. 2013).  In ruling on a motion brought under Rule 12(b)(6), the court accepts as true all well-pleaded facts set forth in the complaint and draws all reasonable inferences in the plaintiff's favor.  *See, e.g., Martino v. Forward Air, Inc.*, 609 F.3d 1, 2 (1st Cir. 2010).

### II. Background

The factual account below is based on the allegations in the operative complaint, as required by Rule 12(b)(6).  For some portion of 2021 and 2022, the plaintiff and the defendant engaged in a sexual relationship, much of which took place in New Hampshire.[1]  Prior to entering that relationship, the plaintiff underwent testing for sexually transmitted infections (STIs), including genital herpes (HSV), and tested negative.[2]  The plaintiff inquired into the defendant's STI status both before and during their relationship, and he consistently represented that he did not have any sexually transmitted diseases.[3]  The parties did not use a condom or otherwise take precautions during most of their sexual encounters.[4]

---

[1] Am. Compl. ("Compl.") (doc. no. 10) ¶¶ 10, 17.
[2] *Id.* ¶ 11.
[3] *Id.* ¶ 14.
[4] *Id.* ¶ 16.

In June 2022, the plaintiff sought medical treatment for "severe internal vaginal pain and discharge."[5]  At that time, no testing for HSV was performed, no diagnosis of HSV was made, and no provider advised her that her symptoms were consistent with or suggestive of HSV infection.[6]  Instead, she was treated for "a presumed infection and/or tear."[7]  Four months later, in November 2022, the plaintiff was diagnosed with genital herpes after laboratory testing revealed that she was positive for HSV-2.[8]

After receiving that diagnosis, the plaintiff informed other sexual partners whom she may have unwittingly exposed and advised them to seek testing.[9]  She also informed the defendant of the diagnosis and again inquired about his status, but alleges that he continued to deny that he was infected.[10]  In April 2024, the plaintiff allegedly learned from a third party that, several years before his relationship with her, the defendant had infected another individual with HSV and had admitted at that time that he was HSV-positive.[11]  The plaintiff alleges that the defendant was the only sexual partner she had during the relevant period "known to be infected with HSV."[12]

Based on these allegations, the plaintiff claims that the defendant knowingly misrepresented his health status and engaged in unprotected sexual contact despite the risk of transmission, thus causing her to contract HSV.[13]  She alleges that the infection causes painful outbreaks, psychological distress, and side effects from antiviral medications.[14]  The plaintiff further alleges that her HSV infection complicated her subsequent pregnancy.[15]  To avoid transmitting the virus to her child, she delivered via cesarean section in July 2025.[16]  The procedure resulted in complications for both the plaintiff and her newborn, including additional medical treatment, hospitalization, and a period during which the plaintiff was unable to see or hold her child.[17]

### III.    Analysis

In her amended complaint, the plaintiff asserts claims against the defendant for battery (Count 1), fraud/intentional misrepresentation (Count 2), intentional and negligent infliction of emotional distress (Counts 3-4), and negligence (Count 5).  Hermanson seeks dismissal of all claims under Rule 12(b)(6).

---

[5] *Id.* ¶ 38.
[6] *Id.* ¶ 39.
[7] *Id.* ¶ 40.
[8] *Id.* ¶¶ 41-42.
[9] *Id.* ¶ 25.
[10] *Id.* ¶¶ 45-46.
[11] *Id.* ¶ 48.
[12] *Id.* ¶ 19.
[13] *See, e.g., id.* ¶¶ 54-55.
[14] *Id.* ¶ 23.
[15] *See id.* ¶¶ 26-37.
[16] *Id.* ¶¶ 26, 28.
[17] *Id.* ¶¶ 29-35.

a. **Statute of limitations**

The defendant's principal argument for dismissal is that all of the plaintiff's claims are time-barred under the applicable statute of limitations. The court may "grant a motion to dismiss based on an affirmative defense, such as the statute of limitations ... 'when the pleader's allegations leave no doubt that an asserted claim is time-barred.'" *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005) (quoting *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998)). Here, the parties agree that the governing limitations period is supplied by New Hampshire's limitations period for personal actions, which provides:

> Except as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

RSA 508:4, I.

The plaintiff commenced this action on October 17, 2025. Although the complaint does not specify precisely when the parties' sexual relationship ended, neither party contends that the conduct giving rise to her claims—namely, the defendant's alleged misrepresentations regarding his HSV status and the parties' unprotected sexual encounters—occurred within the three years preceding that date, i.e., on or after October 17, 2022. Instead, the plaintiff invokes New Hampshire's "discovery rule" to argue that her claims are timely.

The discovery rule imposes a "two-pronged" requirement: the statute of limitations does not begin to run until the plaintiff "know[s] or reasonably should [] know[]" both (1) that she "has been injured" and (2) that her "injury was proximately caused by the conduct of the defendant." *Beane v. Dana S. Beane & Co.*, 160 N.H. 708, 713 (2010) (citation omitted). "Thus, the discovery rule exception does not apply unless the plaintiff did not discover, and could not reasonably have discovered, either the alleged injury or its causal connection to the alleged negligent act." *Perez v. Pike Indus., Inc.*, 153 N.H. 158, 160 (2005). The plaintiff bears the burden of establishing that the discovery rule applies. *Id.*

The plaintiff here alleges that she first discovered her injury on November 9, 2022, when laboratory testing confirmed that she was positive for HSV-2. She further alleges that she did not discover the causal connection between that injury and the defendant's conduct until April 2024, when a third party informed her that the defendant had previously admitted to being HSV-positive and had infected that individual. The defendant argues, by contrast, that the plaintiff was aware of both her injury and its causal connection no later than June 2022, when she sought treatment for "severe internal pain

3

and vaginal discharge."[18]  He contends that it is immaterial that she did not receive a definitive diagnosis at that time because "the discovery rule is not intended to toll the statute of limitations until the full extent of the plaintiff's injury has manifested itself." *Furbush v. McKittrick*, 149 N.H. 426, 431 (2003).  As to causation, he asserts that the plaintiff "simply must have appreciated the possible nexus" between her symptoms and her unprotected sexual relationship with him, given that she had previously tested negative for STIs, engaged in unprotected sex with him, and thereafter experienced symptoms.[19]

At this stage, the court is not persuaded.  The injury alleged here is not merely the onset of vague or nonspecific symptoms, but the contraction of an incurable viral infection.  The plaintiff alleges that she did not know she had contracted HSV until November 2022.  Whether she "could reasonably discern that [s]he suffered some harm" from the defendant's conduct based on her June 2022 symptoms presents a question of fact not suitable for resolution on a motion to dismiss.  *Beane*, 160 N.H. at 713 (quoting *Pichowicz v. Watson Ins. Agency*, 146 N.H. 168, 168 (2001)).  The complaint alleges that she was treated in June 2022 for a "presumed infection and/or tear," which are conditions that may occur in the absence of any sexually transmitted disease.  The court cannot conclude, as a matter of law, that the plaintiff should have known of her injury simply because her symptoms were vaginal in nature and arose after engaging in unprotected sexual activity.[20]

Even assuming that the plaintiff's June 2022 symptoms were sufficient to put her on notice of some injury, the complaint leaves room for doubt as to whether she knew or reasonably should have known of its causal connection to the defendant at that time.  The complaint alleges that the defendant was not the plaintiff's only sexual partner during the relevant period, that no partner—including the defendant—disclosed being HSV-positive during or after the relevant time period, and that the defendant continued to affirmatively deny having any sexually transmitted infection even after the plaintiff informed him of her diagnosis and again inquired into his STI-status.  The plaintiff further alleges that she did not learn of the defendant's prior alleged admission of HSV-positive status until April 2024.  Whether the plaintiff exercised reasonable diligence in identifying the defendant as the source of her infection prior to that time "is a question of fact."  *Black Bear Lodge v. Trillium Corp.*, 136 N.H. 635, 638 (1993); *see Brown v. Mary Hitchcock Mem'l Hosp.*, 117 N.H. 739, 744 (1977) (concluding plaintiffs' claims were not barred by the statute of

---

[18] Am. Compl. (doc. no. 10) ¶ 38.

[19] Reply in Support of Mot. to Dismiss (doc. no. 14) at 4.

[20] For example, the court notes that the complaint does not specify whether, or to what extent, the plaintiff disclosed to her medical providers a history of unprotected sexual encounters at the time of her June 2022 treatment.  Such information, if developed in discovery, could bear on whether a reasonable person in the plaintiff's position should have recognized the possibility of a sexually transmitted infection and thus may affect the statute-of-limitations analysis at summary judgment.

limitations where the delay in plaintiff's discovery of malpractice was caused, in part, by her reliance on the defendant-doctor's assurances that he had not caused her injury).

Accordingly, taking the complaint's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court cannot conclude at this stage that her claims are time-barred under RSA 508:4, I.  The motion to dismiss on statute of limitations grounds is therefore denied.

### b.  Battery

***Tort liability for transmission of sexually transmitted infections.***  The defendant next argues that the plaintiff's battery claim should be dismissed because New Hampshire law does not recognize a private cause of action arising out of the transmission of a sexually transmitted disease.  The defendant acknowledges that this court reached a contrary conclusion in *Hudson v. Dr. Michael J. O'Connell's Pain Care Center*, where it noted the following in considering whether a plaintiff had sufficiently pled claims for battery and negligence against the individual from whom she allegedly contracted herpes:

> The New Hampshire Supreme Court also has not addressed battery in the context that is raised in this case, when battery occurs by infecting someone with a sexually transmitted disease.  In *Welzenbach v. Powers,* 139 N.H. 688, 660 A.2d 1133 (1995), the court denied the plaintiff's claims, including battery, arising from allegations that the defendant had falsely assured the plaintiff that she was taking contraceptive measures during their sexual relationship when she was not, which resulted in the birth of a baby.  *Id.* at 693, 660 A.2d 1133.  In making that determination, the court distinguished cases based on a sexually transmitted disease, stating that the decision did not "address the compelling public policy to halt the spread of sexually transmitted diseases," and cited *Kathleen K. v. Robert B.,* 150 Cal.App.3d 992, 198 Cal.Rptr. 273, 276 (1984) (recognizing a cause of action for negligently or deliberately transmitting venereal disease).  The defendants concede that courts have recognized liability under a variety of legal theories for harm caused by infecting another with a sexually transmitted disease.  *See McPherson v. McPherson,* 712 A.2d 1043, 1046 (Me. 1998); *see also Behr v. Redmond,* 193 Cal.App.4th 517, 123 Cal.Rptr.3d 97, 105 (2011); *Endres v. Endres,* 185 Vt. 63, 968 A.2d 336, 340 (2008); *Hamblen v. Davidson,* 50 S.W.3d 433, 438 (Tenn. Ct. App. 2000); *Deuschle v. Jobe,* 30 S.W.3d 215, 218-19 (Mo. App. W.D. 2000).

822 F.Supp.2d 84, 94-95 (D.N.H. 2011) (DiClerico, J.).

The defendant maintains that this reasoning misapplied *Welzenbach*, and that a proper reading of that decision compels dismissal of the plaintiff's battery claim here.  According to the defendant, *Welzenbach* reflects the New Hampshire Supreme Court's

reluctance to recognize new tort duties arising out of consensual sexual relationships and emphasizes that such policy determinations are most appropriately legislative, not judicial.[21]  He further argues that *Welzenbach*'s statement that it was not addressing claims involving the transmission of sexually transmitted diseases does not support recognition of such claims, but instead underscores the absence of any existing cause of action under New Hampshire law.  On that basis, the defendant contends that, because neither the New Hampshire Supreme Court nor the legislature has affirmatively recognized liability for the transmission of a sexually transmitted disease, this court should decline to extend New Hampshire tort law and dismiss the plaintiff's claim.

     *Welzenbach*, however, does not compel the result the defendant advances.  The *Welzenbach* Court was careful and explicit about the limits of its holding.  The case involved a married man who sued his consensual sexual partner for misrepresenting that she was using contraception.  139 N.H. at 689.  The alleged misrepresentation resulted in the woman's pregnancy and the birth of a healthy child, and the court grounded its public policy analysis in that specific factual context, i.e., consensual intimacy, a healthy child, and the legislature's clear policy requiring paternal support obligations.  *Id.* at 693.  In other words, the *Welzenbach* court did not purport to categorically foreclose civil liability in all contexts involving intimate relationships.

     Nor does *Welzenbach* stand for the proposition that only the legislature may recognize such causes of action.  The court's observation that matters of public policy are often addressed in the first instance by the legislature was part of its reasoning for declining to extend tort liability where "the underlying event is the birth of a child, who together with its mother are clothed with myriad rights of support and redress by statute and common law."  *Id.* at 691.  In that context, permitting the father to sue the mother for the consequences of that birth would have effectively allowed the father to use tort law to escape his statutory support duties.

     The defendant cites no such analogous legislative policy favoring an STI defendant.  To the contrary, as the *Welzenbach* court recognized, there is a "compelling public policy to halt the spread of sexually transmitted diseases."  *Id.* at 692.  And, as this court noted in *Hudson*, there is a substantial body of authority from other jurisdictions that recognizes liability for the transmission of sexually transmitted diseases under traditional tort theories.  822 F.Supp.2d at 94-95.  Put differently, the plaintiff does not ask this court to "create new causes of action,"[22] but to apply recognized tort principles to a factual context that *Welzenbach* expressly left open.

     ***Intent element.***  Setting aside *Welzenbach*, the defendant contends that the plaintiff's battery claim should be dismissed because the complaint does not adequately allege that the defendant had the "desire" or "certain belief" that he would transmit HSV to the plaintiff.  This argument fails as well.  In applying New Hampshire law, the First Circuit Court of Appeals has held that battery liability attaches to a defendant if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a

---

[21] Mot. to Dismiss (doc. no. 9) ¶¶ 18-26.
[22] Mot. to Dismiss (doc. no. 9) ¶ 36.

third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *United Nat. Ins. Co. v. Penuche's, Inc.*, 128 F.3d 28, 32 (1st Cir. 1997) (quoting Restatement (Second) of Torts § 13 (1977)).  Thus, to state her claim, the plaintiff "must allege that [the defendant] either intended to transmit herpes to her or knew that he had herpes so that infecting her was the natural and probable consequence of sexual relations with her." *Hudson*, 822 F.Supp. at 95 (citing *Leleux v. United States,* 178 F.3d 750, 755 (5th Cir. 1999)); *see also Nat'l Union Fire Ins. of Pittsburgh, PA. v. Puget Plastics Corp.,* 735 F.Supp.2d 650, 659-60 (S.D. Tex. 2010) (discussing Texas state cases differentiating between intentional and negligent torts involving sexually transmitted diseases).  Here, the plaintiff expressly alleges that the defendant "knew that he was infected with genital herpes" and, indeed, that he had previously infected a third-party with HSV prior to engaging the plaintiff in sexual conduct without protection.[23]  The plaintiff therefore sufficiently alleges the defendant's "knowledge of the infection and probable consequences" to make out a claim for battery against him.  *Id.*

### c. **Negligence**

The defendant challenges the viability of the plaintiff's claim for negligence on much the same ground that he challenges her battery claim; namely, that "no New Hampshire Supreme Court case has ever held that there is an affirmative duty to inform sexual partners of health conditions, including STIs."[24]  This argument is similarly unavailing.  Under New Hampshire law, "[a]ll persons have a duty to exercise reasonable care not to subject others to an unreasonable risk of harm." *Remsburg v. Docusearch, Inc.*, 149 N.H. 148, 154 (2003).  In other words, New Hampshire law imposes a duty of reasonable care where harm to another is a foreseeable consequence of one's conduct. Unless and until the New Hampshire legislature or the New Hampshire Supreme Court provide otherwise, the transmission of a known STI to an uninformed sexual partner is at least arguably in the category of foreseeable harms that have historically given rise to duty.  *See id.* ("Parties owe a duty to those third parties foreseeably endangered by their conduct with respect to those risks whose likelihood and magnitude make the conduct unreasonably dangerous."); *see Hudson*, 822 F.Supp.2d at 95 ("[O]ne who is infected with a communicable disease owes a duty not to infect others").  For the reasons explained above, the plaintiff has sufficiently alleged that the defendant subjected her to such foreseeable harm here.  The defendant's motion to dismiss Count 5 is accordingly denied.

### d. **Remaining claims**

The defendant's arguments as to the plaintiff's remaining claims—namely, her counts for fraud/intentional misrepresentation, intentional infliction of emotional distress, and negligent infliction of emotional distress—reiterate the same threshold contention already rejected above: that New Hampshire law does not recognize any cause of action arising from the transmission of a sexually transmitted infection.  That premise is flawed

---

[23] Compl. (doc. no. 10). ¶ 54.
[24] Mot. to Dismiss (doc. no. 9) ¶ 29.

for the reasons already explained and does warrant separate analysis. Moreover, unlike his challenges to the battery and negligence counts, the defendant does not meaningfully engage with the distinct elements of these remaining claims or argue that the complaint fails to plead them with the requisite specificity. *See, e.g., United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *Pickering v. Citizens Bank, N.A.*, 2019 WL 3457602, at *4 (D.N.H. July 31, 2019) (DiClerico, J.) ("[A] court is not obligated to make arguments on behalf of a party, particularly a party represented by counsel, and may disregard arguments that are not developed."). Because the court has already concluded that New Hampshire law permits application of traditional tort principles in this context, and nothing in the defendant's briefing demonstrates that the plaintiff's allegations are insufficient under those established frameworks, the motion to dismiss is denied as to Counts 2 through 4.

### IV.    Conclusion

This decision does not constitute authoritative precedent regarding the scope or pleading requirements of STI-based torts. Such matters are, of course, for the New Hampshire Supreme Court to decide. The ruling here, denying this motion to dismiss under Rule 12(b)(6), is only that, on this record, the court declines to end this lawsuit before discovery is conducted. With that in mind, and for all the reasons stated above, the defendant's motion to dismiss is DENIED.[25]

SO ORDERED.

Joseph N. Laplante
United States District Judge

Dated: May 11, 2026

---

[25] Doc. no. 9.

8